## Pittsburgh, Virginia and Charleston Railway Co. *versus* Bentley.

1. When a railroad company enters upon land, for the purpose of constructing its road, it is proper for the court to lay down a rule as to the value of a life estate therein, as an independent estate entitled to damages. Harrisburg *v*. Crangle, 3 W. & S. 460, followed.

2. The true rule for valuing the damages as a whole, is the difference between the value of the property before the making of the road, and its value after the road is made, as affected by it, and of this difference the life-tenant is entitled to the proportion of the whole, which the value of the life-estate bears to the whole difference.

3. The net annual value of the premises, multiplied by the years of the life-tenant's expectancy of life, and reduced by calculation to a present cash value, is not an incorrect mode of determining the value of the life-estate as compared with the value of the remainder in fee.

4. Permanent injuries, arising from severing parts of a farm that have necessary relation to each other and inconvenience are clearly elements in considering the value of the entire farm.

November 21st 1878.  Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ.  WOODWARD, J., absent.

Error to the Court of Common Pleas of *Washington county:* Of October and November Term 1878, No. 259.

This was an appeal from an award of viewers under the General Railroad Act.

The Pittsburgh, Virginia and Charleston Railway Company was incorporated under the name of the Monongahela Valley Railroad Co., by Act of Assembly approved 8th April 1867.  It had power "to construct its railroad, with single or double track, from a point at or near the city of Pittsburgh, by such route as the board of directors may determine, to a point at or near Monongahela City, Washington county, and thence, up either branch of the Monongahela river, to a point at or near what is known as Rice's Landing." It may "extend its railroad to the West Virginia state line, whenever the board of directors may deem it expedient and necessary, and there connect the same with any railroad, or railroads, authorized by the state of West Virginia."

In pursuance of these powers this company completed its road to Monongahela City, and then endeavored to secure the necessary privileges in order to continue its construction up the Monongahela river.

The plaintiff, Sarah J. Bentley, is the life-tenant of a tract of land containing 100 acres, situated in Union township, Washington county, Pennsylvania, and on the line of the road between Pittsburgh and Monongahela City.  The company, by its agents, engineers, &c., entered upon this land in June 1872, and located their road, and completed its construction some time during that year. They occupy 2.7 acres by their appropriation, and run through

it a distance of 1970 feet. The road divides the farm, leaving 20 acres of bottom land between it and the river, upon which is erected the mansion-house, spring-house and other necessary buildings; and 77.3 acres across the road, from the river, part of which is bottom land. The county road is located above the railroad, and runs nearly parallel with it, at a distance of about 200 feet. The barnyard and barn of the plaintiff are situated on this part of the land lying between the county road and the railroad. The mansion-house is situated probably 100 yards, and the barn probably 50 yards from the line of the railroad. The frontage of the tract on the river is not very great, and the twenty-acre tract lies in the shape of a parallelogram, the distance along the river being from one-half to two-thirds greater than the distance from the river to the railroad, which ranges from 500 to 700 feet. The road passes through the farm by means of a "cut," the extreme depth of which is nine feet, ranging from that to grade. The company have constructed a good and substantial crossing at the point where the road crosses the lane which leads from the mansion to the county road and to the barn, the lane remaining the same as before the location of the railroad.

As the defendants are subject, under the terms of their charter, to the provisions of the General Railroad Act of 1849, the plaintiff presented her petition to the Court of Common Pleas asking the appointment of viewers to assess her damages. The court entertained the petition and appointed viewers, who subsequently reported that the land appropriated amounted to 2.7 acres; that the annual value thereof was $8.15 per acre, and the aggregate value during the lifetime of the petitioner was $440, and that the petitioner had sustained a total damage, including the value of the land taken, of $900. From this award the defendant appealed. On the trial of the appeal the plaintiff testified that her age in June 1872, the date of the entry, was 52 years, and life-tables showing that her expectancy of life was 18.4 years, were offered in evidence. She claimed the annual value per acre of the land appropriated for this period of time, and in addition the sum paid by her for the building of the fence along both sides of the appropriation, which she said amounted to $500. She also claimed damages for the inconvenience of "crossing at the lane," stating, "We have to cross a great many times a day; cows are fed and kept at the barn and have to be brought to the house in the morning and evening to be milked. Trains have to be watched." Also, for the cutting off of water from one of her fields which fronts on the Monongahela river, and for the loss of drainage from the barnyard. She produced evidence that "six passenger trains passed each day;" that it would be "quite a difficulty and disadvantage to bring the cows to milk," and that "the delay caused by having to halt or stop in crossing" the railroad was a great inconvenience, &c. The estimates upon these several items varied somewhat, but the average

amount fixed by her witnesses upon this last item—"the danger of crossing the track"—was $25 to $30 per annum. The defendants endeavored to exclude this testimony by asking the court to charge the jury that damages for such possible loss or inconvenience could not enter into their verdict, but this the court refused to do, and this refusal formed the subject of one of the exceptions filed.

Several witnesses also testified that they grounded their opinion as to the damage done to the plaintiff in part upon the fact that there was danger from fire being communicated by defendants' locomotives. One says, "the barn was close to the road, and straw cannot be used below barn to feed stock." Another says, "I thought the barn was in danger. Could not feed straw in barnyard." The defendants requested the court to say to the jury that this element of possible loss could not enter into and form part of their verdict. This the court refused to do, and the refusal was laid as a ground for reversal.

The defendants contended that, inasmuch as the plaintiff had herself fixed her expectancy of life at 18.2 years, and claimed damages for injuries inflicted upon a term of that duration, the question for the jury to consider was simply whether the rental value of her property taken as a whole had been depreciated by the construction of the railroad through it; that if the evidence showed that a term of that length would have brought as much after the construction as before, then the plaintiff could not recover. The court, drawing a distinction between the "market value" and the "rental value" refused to so charge, and this was assigned as error.

The plaintiff, among others, submitted the following points, to which are appended the answers of the court, Hart, P. J.

5. If the jury find that the plaintiff as tenant for life under her husband's will, was in the actual possession and occupancy of the land at the time the defendant company entered thereon and constructed their railway; and that there was no existing tenancy or leasehold of any part thereof taken by the railway company for the purposes of their road, then the measure of damages for the appropriation of such land will be the fair annual value of the land so actually taken, during the period of her life expectancy, qualified on the principle of present payment, as of the time of the injury.

Ans. "We affirm this point."

7. That in addition to the compensation allowed to the plaintiff for the value of her interest in the land taken, the jury are to take into consideration and make just allowance under the evidence for injuries done to the plaintiff's interest in the land not taken— the cutting off the communications of the farm—of the barnyard and barn—the increased difficulties of access and inconvenience caused by the cut through the land—the shape and position of the fields—the cutting off of water—the obstructing of flow of manure-water into the meadow, &c.

Ans. "We answer this in the affirmative."

The following were among the points of defendants, with the answers of the court thereto :

5. That the plaintiff is not entitled to recover any damages arising from inconvenience of crossing the defendants' tracks, or damages that may be done by sparks from defendants' locomotives, and that any estimate made by the witnesses in this case based upon such inconveniences must be disregarded by the jury, it being in evidence that the defendants have already constructed a good crossing upon this property.

Ans. "This point is denied. The plaintiff is entitled to damages for the inconvenience resulting from the crossing, and for inconvenience of access to the farm."

8. That in estimating the damage to the plaintiff's interest in this land, the jury are to take the fair market value of said interest in the entire property, at the time of the appropriation by the defendant unaffected by the expected location of the railway, as compared with the fair market value of said interest in said property, taken as a whole, immediately after the completion of the defendants' railway through it; and that the difference in these values is the true estimate of the damage sustained by the plaintiff.

Ans. "The eighth point is affirmed."

9. The plaintiff having shown that her expectancy of life at the time of the completion of defendants' railway through this property was eighteen years, and claiming damages in this issue for a term of that extent, the jury are to find whether this property, taken as a whole, would rent for as much for such term immediately after the construction of the defendants' railway, as affected by such construction, as it would have rented for, for such term, before location of defendants' railway ; and if they believe from the evidence that it would rent for as much after as before, their verdict must be for the defendants.

Ans. The true test is the market value, of which the rental value is evidence."

In the general charge the court, inter alia, said:

"Owing to the peculiar, and I may say, novel, character of the case, we have admitted evidence, which, though not bearing directly upon the issue, does yet shed some light, and may help the jury somewhat in arriving at a just conclusion. For instance, we have admitted testimony to show the comparative value of the land immediately before the construction of the defendants' road, and as unaffected by it, and the value of the same land immediately after, and as affected, by the building of the road. Now, this affords only an imperfect standard, by which to judge of the injury done to the plaintiff's life estate, or of the advantages accruing to it from the railroad. For example, one result of the construction of the road might be to obstruct the mining for coal, stone or other minerals,

[Pittsburgh, Virginia & Charleston Railway Co. *v.* Bentley.]

in a way to cause serious detriment to the estate in remainder, but none at all to the life-estate; because the life-tenant has no right to open mines and work them. The same thing might be true of valuable timber taken by the company, to the injury of the fee— though not to the detriment of the life-tenant, who has no right to use any more timber than is necessary for house use, or for repairing and fencing. So, on the other hand, the construction of the road might greatly benefit the estate in remainder, without any advantage to the life-estate.

"We have also admitted evidence as to the rental value of the whole tract.

"A great deal of testimony has been received also in regard to the manner in which the road traverses the land; the cost of necessary fencing; the cutting off of plaintiff's supply of water for her residence, and the consequent inconvenience to her; the cutting of the land in the vicinity of the road into small fields; the inconvenience resulting from the road passing between the house and outbuildings; the cutting off of springs which supplied some of the fields; the draining of the barnyard into the railroad cut.

"Now all this evidence was admitted because, in the judgment of the court, it all shed more or less light upon the question which you are to decide. That question is, what, if any damages, is the plaintiff entitled to for injury to her life-estate, resulting from the construction of defendants' road through the land devised to her for life? Where the plaintiff owns the land in fee simple, the measure of damages has been held by the Supreme Court in a great number of cases, to be the difference between the value of the land before the road was built, and its value after the road is finished.

"By analogy the measure of damages in this case would be the difference in value of the plaintiff's life-estate before and after the road was built. The difficulty is how to apply this rule. It will be for you to do so; and to ascertain from all the evidence whether or not the value of the life-estate was enhanced by the building of the road, and, if you find it was so enhanced, then you will set that advantage off against any actual damage done to the plaintiff's life-estate. If the advantages exceed in value the amount of damage done, then your verdict would be for the defendant. But, if the damages exceed the advantages, then your verdict would be in favor of the plaintiff for the difference, after subtracting one from the other, with interest on that difference to the date of your verdict.

"In determining this question, you will allow the plaintiff for the value of her life-estate in the 2.7 acres appropriated; also for what damages you may think she is entitled to, on account of the various inconveniences of which I have spoken; you will then

[Pittsburgh, Virginia & Charleston Railway Co. *v.* Bentley.]

determine whether her life interest has been enhanced by the construction of the road, and if so, to what extent.

"We are asked to say to you, that you are to take into the account only such damages as are special to this particular property. That is true; but then advantages, if proved to have accrued to this property, are to be allowed, although there may be evidence that similar advantages have resulted to other land in the vicinity.

"Evidence has been laid before you, of the life expectancy of the plaintiff at the date of the construction of the road.

"She was then fifty-two years of age, and her expectation of life was at that time, eighteen and four-tenths years. Now, this evidence was admitted in order to furnish you an additional mode or rule, by which to estimate the damages, in case you should find damages for the plaintiff beyond advantages. It is also applicable to an estimate of the value of the life estate. Perhaps it will furnish you as good a guide as anything else in the case to enable you to reach a satisfactory conclusion."

The verdict was for plaintiff for $1349.58, and after judgment thereon, defendants took this writ and assigned for error the answers to the above points of plaintiff, and to the eighth and ninth points of defendants.

*A. M. Todd*, for plaintiffs in error.—If judicial authority can fix any rule, the series of adjudged cases, from Thoburn's case, 7 S. & R. 411, down to Harvey's case, 11 Wright 434, has established the measure of damages for building a railroad through a man's land to be the difference between the value of the land before the road was built, and its value after the road is finished: Hornstein *v.* A. & G. W. Railroad Co., 1 P. F. Smith 87; Turnpike Road *v.* Brosi, 10 Harris 29.

By reason and analogy, the rule as to the measure of damages done to the interest of a life-tenant, would be the difference between the rental value of the term before the road was built and its value after the road is finished.

This being the proper question for the jury, of what importance was it whether the 2.7 acres of land appropriated were worth annually to the tenant $10, $15 or $50, provided the rental value of the remaining 97.3 acres was equal to, or greater than, the rental value of the entire one hundred acres before the location of defendant's road?

The contention is that, admitting the loss of land and the existence of inconvenience, the rental value of the remaining 97.3 acres is largely enhanced by reason of the facilities afforded by the railway, and the loss and inconvenience more than compensated. The unqualified affirmance of the plaintiff's fifth and seventh points established a different rule as to the measure of damages than that contended for, and tended to confuse and mislead the jury.

[Pittsburgh, Virginia & Charleston Railway Co. v. Bentley.]

The inconvenience of crossing defendants' tracks, is not a proper subject for the assessment of damages: Watson v. P. & C. Railroad Co., 1 Wright 473; E. P. Railroad Co. v. Hiester, 4 Id. 53; Patten v. N. C. Railway Co., 9 Casey 426; Boyd et al. v. Negley, 4 Wright 377.

The other proposition contained in the defendants' fifth point is equally true, to wit: that the plaintiff cannot recover for possible loss from fire communicated by sparks from passing locomotives: Sunbury & Erie Railroad Co. v. Hummell, 3 Casey 99; Boyd et al. v. Negley, 4 Wright 377; Lehigh Valley Railroad Co. v. Lazarus, 4 Casey 203; Patten v. The Northern Central Railroad Co., 9 Id. 426.

It is true that the court did charge the jury, in answer to points presented, that the difference in the market value of the plaintiff's interest in the land, before and after the location of the road must be considered by them; but it is urged that the refusal to charge as requested in the ninth point presented by the defendants (fourth assignment), tended to confuse and mislead the jury, and the denial of that point, coupled with the affirmance of the plaintiff's fifth and seventh points (first and second assignments), gave to the jury two rules for their guidance; and if it be urged that the rule as laid down in answer to the defendants' eighth point is correct (as it undoubtedly is so far as it goes), then the second rule is clearly incorrect. And if the jury ignored the correct and adopted the incorrect rule then the case stands as though no correct rule had been given.

To ascertain whether the jury adopted the rule as insisted upon by the plaintiff and approved by the court, it is only necessary to look at the amount of their verdict and segregate it in accordance with the plaintiff's testimony.

*Thomas H. Baird* and *J. L. Judson*, for defendant in error.— The vice of the argument on the other side is, that it seeks to obliterate all distinction between a life-tenancy and a term for years. As tenant for life, Mrs. Bentley held a peculiarly valuable interest in this land, inasmuch as it was precisely commensurate with her need, and was identified with all the accumulated comforts and advantages of a lifelong home. For all these we are well aware she could recover no damages. But under her tenancy, she could either rent the land, house, &c., and pursue some other occupation to add to her means of living, in which case the rental value of the land would have been her measure of damage perhaps, leaving her lessee to recover for injuries to his use and enjoyment of it: Ripka v. Sergeant, 7 W. & S. 9; injuries to crops, fences, &c., and by occupation of land: Plank Road v. Thomas, 8 Harris 91; Turnpike v. Brosi, 10 Id. 29; loss of term, &c.: North Pennsylvania Railroad Co. v. Davis, 2 Casey 238. Or, she could—as in fact she did—

retain the land, employing upon it the necessary capital in agricultural implements, teams, cattle, and other stock; hiring labor of others and using her own capabilities in carrying on business, and thus realize for herself the profit of the tenant in addition to that of the landlord, and be entitled to corresponding damages for loss of both.

No rule is more firmly established in cases of this kind, than that which requires all estimates of values to be made as of the time of the injury: Thoburn's Case, 7 S. & R. 411; Shrunk *v.* Schuylkill Navigation Co., 14 Id. 71; Zimmerman *v.* Union Canal Co., 1 W. & S. 346. And in the cases where the amount of damages depends on the length of a life in being, the rule is, to ascertain the value for a year, as of the time of the injury, and when the annual money value has been found, to give as damages its present worth, according to the expectation of life, as ascertained by the mortuary tables of well-established reputation: Macon & Western Railroad Co. *v.* Johnson, 38 Geo. 409; How *v.* How, 48 Maine 428; Sedgwick on Damages 460, note 3; and see Thompson *v.* Stevens, 21 P. F. Smith 161, 169.

While we freely admit that there can be no damages allowed for crossing the tracks of a railroad laid at grade, either on a farm or in the streets of a town, yet a very different rule prevails where such track is laid in cuts or upon embankments: Railroad Co. *v.* Boyer, 1 Harris 497; Watson *v.* P. & C. Railroad Co., *supra;* W. P. Railroad Co. *v.* Hill, 6 P. F. Smith 460; W. & R. Railroad Co. *v.* Stauffer, 10 Id. 374; Hoffer *v.* Penn'a. Canal Co., 6 Norris 221.

The judgment of the Supreme Court was entered November 28th 1878,

PER CURIAM.—In the Borough of Harrisburg *v.* Crangle, 3 W. & S. 460, it is held that where there is a life-estate, and a remainder in fee, each owner is entitled to damages for his own estate and security. Hence it was proper for the court to lay down a rule as to the valuation of the life-estate in this case as an independent interest entitled to damages. We cannot say that the net annual value of the premises multiplied by the years the life-tenant's expectancy of life, and reduced by calculation to a present cash value is an incorrect mode of determining the value of the life-estate as compared with the value of the remainder in fee. This is all we understand the court did in the answers to the points. But the court gave the true rule for valuing the damages as a whole, which is the difference between the property before the making of the road and its value after the road is made, and as affected by it. Of this difference the life-tenant is entitled to the proportion of the whole which the value of the life-estate bears to the whole dif-

ference.    In this way the owner of each estate is paid his just proportion.

We do not understand that the court, in the answers assigned for error, intended to contradict the general rule as to the measure of value, or sum of the entire damages, after a consideration of advantages and disadvantages, but merely to say what may enter into the consideration of the jury, as elements in considering the advantages and disadvantages, and arriving at a general result.    Clearly permanent injuries arising from severing parts that have a necessary relation to each other, inconveniences and other matters, are elements in considering the value of an entire farm.

Judgment affirmed.