# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA

---

## Fletcher *v.* Wilmington Steamboat Company, Appellant.

*Negligence—Steamboats—Fogs—Collisions — Passengers — Case for jury.*

1. Unusual caution is required of those in charge of vessels passing through a fog.

2. In an action against a steamboat company for personal injuries sustained by plaintiff in consequence of a collision between a ferry boat and defendant's steamboat upon which the plaintiff was a passenger, the case was for the jury where it appeared that the collision occurred in a dense fog and there was evidence that the captain of defendant's steamboat failed to observe the regulations established by the government for boats in passing, as a result of which the accident occurred.

*Negligence—Damages—Evidence—Measure of damages — Present value—Expectancy.*

3. In an action for personal injuries, the admission of evidence as to the present value of money for different periods of expectancy based upon total disability was not error where there was evidence of plaintiff's earning power before she was injured, and that she was totally disabled by the injuries which she sustained.

4. In such case, the trial judge properly charged the jury, "If, however, you do not believe that she is totally incapacitated for work, but find as a fact, as one physician tells you, that she is now able to do light work, then you will consider compensation to her,

instead of contemplating total loss of earning power, simply a diminution or lessening of earning power."

Argued Jan. 17, 1918.    Appeal, No. 237, Jan. T., 1917, by defendant, from judgment of C. P. No. 2, Philadelphia Co., Sept. T., 1916, No. 2853, on verdict for plaintiff, in case of Charity Fletcher v. Wilmington Steamboat Company.    Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ.    Affirmed.

Trespass to recover damages for personal injury.   Before BARRATT, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $2,500 and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence, and instructions to the jury.

*Francis S. Laws,* of *Lewis, Adler & Laws,* for appellant.—The court erred in admitting evidence of the present value of money for different periods of expectancy based upon total disability: Beck v. Baltimore & Ohio R. R. Co., 233 Pa. 344; Helmstetter v. Pittsburgh Rys. Co., 243 Pa. 422; Gallagher v. Philadelphia Rapid Transit Co., 248 Pa. 304; Saunders v. Pittsburgh Rys. Co., 255 Pa. 348.

Binding instructions should have been given for defendant: Lotz v. Baltimore & Ohio R. R. Co., 247 Pa. 206; Watkins v. Union Traction Co., 194 Pa. 564; Sullivan v. Consolidated Traction Co., 198 Pa. 187.

*Victor Frey,* with him *Augustus Trask Ashton,* for appellee.—The evidence complained of was admissible: Kerr v. Frick, 255 Pa. 452.

The question of defendant's negligence was for the jury: The "Virginia," 203 Fed. Repr. 351; The Bailey Gatzert, 170 Fed. Repr. 101; Siever v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co., 252 Pa. 1.

OPINION BY MR. CHIEF JUSTICE BROWN, March 18,
1918:

On the morning of August 27, 1916, the appellee was
a passenger on a steamboat belonging to the defendant
company, which started from Philadelphia for Wilmington, Delaware.   Shortly after it left the wharf, when it
reached a point in the Delaware river at or near Mifflin
street, it collided with a ferryboat which was neither
owned nor operated by the defendant.   At the time of
the collision the appellee was sitting on a camp stool on
one of the decks of the boat.   The collision threw her
over or across the chair or stool on which she was sitting,
and this action was brought for the recovery of damages
for the injuries she sustained.   From the judgment on
the verdict in her favor the defendant has appealed.

The question of the defendant's negligence as the cause
of the collision was submitted to the jury in a charge of
which no complaint is made in any of the assignments of
error.   The defendant offered no testimony.   At the
close of plaintiff's case it asked that a verdict be directed
in its favor, on the ground that nothing disclosed in the
evidence submitted by the plaintiff showed negligence
on its part.   The refusal of this request and the overruling of the motion for judgment non obstante veredicto
constitute one of the two complaints of the appellant.
In support of this complaint it is urged that the rules
for the government of the movement of vessels when approaching each other, which were offered in evidence by
the plaintiff, were being strictly observed by the defend
ant at the time of the collision, and it was not, therefore,
guilty of negligence in colliding with the ferryboat.
This overlooks the testimony of the captain of that boat,
and it was upon his testimony that the case went to the
jury.   He testified as to the movements of his boat coming up the Delaware from Gloucester, and stated that,
when he reached a point opposite Mifflin street, he entered a bank of fog; that he ran his boat at about four

miles an hour, blowing his fog horn; that he heard the fog horn of a boat coming towards him in the fog; that he was running close to the Pennsylvania shore, because of some obstructions in the river which he wished to avoid; that after he had got into the fog he saw ahead of him, and coming in his immediate direction, the steamboat of the defendant, between four and five hundred feet up the river from him; that he immediately blew two whistles, which meant that the steamboat was to pass him on the left side. According to his testimony, the rule of the river as to the passing of one boat by another is the same as the rule of the road, and ordinarily boats keep to the right in passing. There is, however, an exception to this, according to Rule 1, Article XVIII, of the pilot rules. That rule, after stating the general regulation, requiring each passing boat to keep to the right, provides: "But if the courses of such vessels are so far on the starboard of each other as not to be considered as meeting head and head, either vessel shall immediately give two short and distinct blasts of her whistle, which the other vessel shall answer promptly by two similar blasts of her whistle, and they shall pass on the starboard side of each other. The foregoing only applies to cases where vessels are meeting end on or nearly end on, in such a manner as to involve risk of collision." The captain of the ferryboat further testified that his boat was in the position covered by this rule; that he gave the signals provided for by it; that he received no answer; that he then stopped his engines and gave the danger signal and started his boat backward, and that there was sufficient navigable water on the right side of his boat for the steamboat to pass him. Instead of passing him on the right or starboard side, as the signal from the ferryboat indicated to it that it should, it did not vary its course, and struck the ferryboat on the port side with great force.

Unusual caution is required of those in charge of vessels passing through a fog: The "Bailey Gatzert," 170

Fed. Repr. 101; The "Virginia," 203 Fed. Repr. 351; and in view of the testimony of the captain of the ferryboat, the question of the negligence of those in charge of the steamboat could not have been taken from the jury. It was submitted to them under the following correct instruction: "Did he (the captain of the ferryboat) give these signals as he testifies, and did the 'City of Chester' negligently, under its high measure of duty to its passengers, fail to observe them, thereby violating the rule of navigation, and as a consequence by its negligence bring about the collision? The first point submitted by counsel for the defendant states the defendant's position here so accurately as to the law that I will incorporate it in my general charge, and instruct you at this point that if you believe that the steamer 'City of Chester' was proceeding down the Delaware river on the twenty-seventh day of August, 1916, upon her proper course and in a proper manner; that she was in charge of competent and skillful navigators, and was being operated and navigated in a careful, competent and skillful manner, and that without fault on her part or those in charge of her she was run into by another boat over which neither the defendant nor its employees had any control, then the defendant was not responsible for any injury resulting to the plaintiff, and your verdict must be for the defendant. That is correct, gentlemen of the jury, and I so instruct you. If, however, the employees of the defendant company were at all negligent, if they failed to recognize the signals of the captain of the 'Dauntless,' if you believe that he actually did give them; if by the exercise of the high degree of care imposed upon them as common carriers they could have stopped the 'City of Chester' or have done anything else to have avoided the collision, then it was their duty to have done so, and if they failed in that duty, then they were negligent, and their negligence would impose liability upon the defendant company for any injuries suffered by the

plaintiff as a result of their negligence." The sixth and seventh assignments of error are dismissed.

The first, second, third, fourth and fifth assignments complain of the court's admission of evidence of the present value of money for different periods of expectancy based upon total disability. It appeared from the testimony that, before the plaintiff was injured, she had an earning capacity of from $6 to $7 per week, and if there was evidence from which the jury could fairly find that she was totally disabled by the injuries she sustained, the first five assignments of error are without merit. The jury could fairly have found from the testimony of the plaintiff herself, and from that of two of the three physicians called, that her injuries were permanent, totally depriving her of earning capacity. From the amount of the verdict returned, in view of the expectancy of the plaintiff's life, the jury manifestly did not find that she was totally disabled. In submitting the question of her total disability to them, the learned trial judge correctly charged as follows: "If, however, you do not believe that she is totally incapacitated for work, but find as a fact, as her one physician tells you, that she is now able to do light work, then you will consider compensation to her, instead of contemplating total loss of earning power, simply a diminution or lessening of earning power."

The first five assignments of error are also dismissed, and the judgment is affirmed.