# McCaffrey *v.* Schwartz, Appellant.

*Evidence—Cross-examination—Practice, C. P.*

1. A trial judge should always be liberal in his rulings on questions put in cross-examination.

*Negligence—Damages—Loss of wages—Impairment of earning power—Expectancy of life—Present value tables—Stare decisis—Practice—Trial—Charge—Failure to request—Appeal—Reversible error.*

2. In actions for personal injuries, the standard of compensation is not "loss of wages" which one injured "may experience in the future," but loss brought about by impairment of earning capacity.

3. It is error for the trial judge to charge the jury that plaintiff's expectancy of life is not to control them in estimating his future losses due to impaired earning power.

4. The jurors should be instructed that it is their duty to determine, from the evidence, whether plaintiff's impairment of earning power, caused by the injury, would last until the end of his life expectancy, or, if not, how soon it would probably change for the better, and to adjust their award of damages on that score accordingly.

5. A mere failure to charge on the subject of the obligation of the jury to reduce its award of future payments, anticipated in a verdict, to their present worth, is not always to be held reversible error, particularly in the absence of a request so to charge or of any effort to call the trial judge's attention to a lack of such instructions. Such omission will not be dogmatically classed by the appellate court as reversible error.

6. While the absence of such instructions does not necessarily constitute reversible error, such instructions are always appropriate where future payments are to be anticipated in a verdict.

7. The jury's attention should be called to the fact that a man's earning power naturally decreases as his life approaches an end; and this is particularly true of the manual laborer, and also in a less degree of the average brain worker.

8. Allowance should be made for this natural decline, when computing losses brought about by the decrease of earning power attributable to the accident.

9. The jury's attention should be called to the fact that the value of a lump sum received to-day is much greater than the value of a

number of smaller sums of equal total amount received over a long period of time.

10. A sum sufficient to provide from interest alone the amount of the estimated annual decrease in earning power, would be grossly excessive, since the entire capital would remain unimpaired at the date of plaintiff's decease.

11. An injured plaintiff is not necessarily entitled to receive a perpetual annuity calculated on his loss of income from the date of the accident, for he may be disabled, by illness, natural decline or other causes, without regard to the effect of the accident, from continuing to earn the income he had before injury.

12. After taking into account the income earned, the circumstances under which it was earned, and all factors affecting the likelihood of its continuance, increase or diminution, as unaffected by the accident, the jurors are to say what, in their opinion, is fair compensation for the impairment of earning power, whether permanent or temporary, due to the accident.

13. Judicially established rules of evidence and procedure which tend to confuse the minds of jurors, should be abandoned; this is not inconsistent with our doctrine of stare decisis.

14. Present worth tables are not admissible at jury trials.

*Negligence — Damages — Expectancy of life — Carlisle tables — American tables—Discretion of court—Cumulative evidence.*

15. When "Carlisle tables" or the "American tables," purporting to show life expectancies at given ages, are placed in evidence, the court should carefully instruct concerning their use, and all the factors which tend to limit their application ought to be stressed.

16. It is not enough for the trial judge to charge, that the tables are of some aid, but not conclusive in determining the probable life of the plaintiff.

17. The jury's attention should be called to all the circumstances affecting the probable duration of plaintiff's life, such as sex, prior state of health, nature of daily employment and its perils, if any, manner of living, personal habits, individual characteristics, and such other facts as may affect the duration of life.

18. The admissibility of the "Carlisle tables" and the "American tables" is subject to two principles:

(a) Where there is already sufficient evidence before the jury from which, without the aid of the tables, it can properly decide the probable duration of the life in question, the trial judge may exercise his sound discretion, as in the case of any matter of cumulative evidence, and decline to admit the tables on the ground of lack of necessity.

(b) Where, under the facts of a particular case, the admission of the tables would tend to do more harm than good (if for instance plaintiff did not enjoy normally good health before the accident, or is following a particularly hazardous occupation, or there is no reasonable probability of the financially harmful effects of the injury lasting till the end of plaintiff's life), the trial judge, in the exercise of sound discretion, may bar them, as tending to confuse or mislead the jury.

*Negligence — Damages — Reduction of damages — Refusal of plaintiff to submit to surgical operation.*

19. In an accident case, it is for the jury to say how much plaintiff's damages should be reduced where his refusal to submit to a surgical operation would be to retain permanently a condition which might be removed by an operation, which an ordinarily prudent man would, under the circumstances, undergo.

*Appeals—Record—Amendment of record.*

20. Where a trial judge desires to amend the record following its certification, he should do so in a formal way, after notice to counsel.

*Practice, C. P.—Inadequacy of charge—Assignments of error.*

21. While under Act of May 11, 1911, P. L. 279, a mere inadequacy of charge may be assigned as error, under a general exception, it is still the rule that, ordinarily, the appellate court will not reverse on such assignment alone.

Argued January 5, 1926. Appeal, No. 406, Jan. T., 1925, by defendant, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1923, No. 5783, on verdict for plaintiff, in case of Thomas P. McCaffrey v. Adolph H. Schwartz. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Trespass for personal injuries. Before McDEVITT, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $7,500. Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*Samuel S. Herman,* for appellant.—The real measure of damages is the "loss of earning power" rather than the "loss of earnings"; this is clear, not only from the cases but from the common sense view of the situation: Piper v. Adams Express Co., 270 Pa. 54, 61; Goodhart v. R. R., 177 Pa. 1.

The court failed to instruct the jury to ascertain the present value of any future losses to the plaintiff as properly defined under the law: Burns v. R. R., 239 Pa. 207.

It was reversible error not to explicitly charge the jury concerning the present worth rule: Kerns v. Ripka, 85 Pa. Superior Ct. 97; Gerber v. Phila., 60 Pa. Superior Ct. 119; Hockenberry v. Electric Co., 251 Pa. 394; Fedorawicz v. Illuminating Co., 246 Pa. 141.

Appellant, frankly, cannot reconcile the dissenting opinion in Hockenberry v. Electric Co., 251 Pa. 394, and the opinion in Kerns v. Ripka, 85 Pa. Superior Ct. 97, with the decision in Wilkinson v. North East Boro., 215 Pa. 486, 491: see also Snyder v. Reading Co., 284 Pa. 59; Fortney v. Breon, 246 Pa. 47.

It is not necessary that counsel specifically request the trial judge to explicitly charge the jury concerning the present worth rule: Snyder v. Reading Co., 284 Pa. 59; Gerber v. Phila., 60 Pa. Superior Ct. 119.

It was error to charge the jury to "recompense [plaintiff] for any loss in wages up to the present time and any loss that he may experience in the future," instead of limiting his right to recover to his past and probable future loss of earning power: McLaughlin v. Corry City, 77 Pa. 109.

The use of mortality and present value tables in personal injury cases is inequitable and misleading: Hayes v. R. R., 195 Pa. 184.

*Harry A. Mackey,* with him *Geo. C. Klauder,* for appellee.—Defendant was not prejudiced or harmed by any omission or failure in the charge of the trial judge:

Hockenberry v. Electric Co., 251 Pa. 394; Fedorawicz v. Citizens E. I. Co., 246 Pa. 141; Newingham v. Blair, 232 Pa. 511; Audino v. Ry. Co., 83 Pa. Superior Ct. 257.

The majority of the jurisdictions hold that prospective damages for the impairment of earning capacity should be reduced to its present worth: Laeger v. Metcalf, 11 Ariz. 283; Prairie Creek Coal Mining Co. v. Kittrell, 106 Ark. 138; Storrs v. Traction Co., 134 Cal. 91; Aldrich v. Palmer, 24 Cal. 513; Copson v. R. R., 171 Mass. 233; O'Brien v. White, 105 Maine 308; Baltimore & Ohio R. R. v. Henthorne, 73 Fed. 634; Fulsome v. Concord, 46 Vt. 135; Broz v. General Hospital Assn., 96 Neb. 648; Sax v. R. R., 125 Mich. 252; Illinois Cent. Ry. v. Houchins, 121 Ky. 526; Wilkinson v. Boro., 215 Pa. 486; Reitler v. R. R., 238 Pa. 1; Mack v. Rys., 247 Pa. 598.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 15, 1926:

Thomas P. McCaffrey sued Adolph E. Schwartz in trespass, for personal injuries, and recovered a verdict on which judgment was entered; defendant has appealed, complaining (1) of the trial court's refusal to enter judgment in his favor n. o. v., asked on account of the alleged contributory negligence of plaintiff, (2) of certain rulings denying defendant the privilege of cross-examination, (3) of alleged errors in the charge, particularly (a) when dealing with the subject of awarding damages for impairment of earning capacity, (b) in omitting instructions on the necessity of reducing any monetary award which anticipated future losses to the present worth of the money involved; and this last complaint raises for discussion the general subject of the admissibility in evidence (c) of standard tables evaluating anticipated payments, and (d) of other tables estimating expectancies of life. All matters above indicated will be considered by us, and, since errors connected with some of them require that the case be tried again (as will be

shown in the course of this opinion), we add another heading for consideration (referred to in argument for appellant, though not covered by any assignment of error), viz, (4) the obligation of plaintiff to reduce his damages by submitting to the usual surgical treatment appropriate to his physical condition.

The facts of the case, necessary to an intelligent consideration of the several points before us, may be briefly stated from plaintiff's testimony thus: At about six p. m. on December 27, 1923, a foggy, snowy evening, McCaffrey, while crossing a street in West Philadelphia, was knocked down by the automobile of defendant, which the latter was driving; plaintiff suffered a dislocation of his right shoulder and other subordinate injuries; at trial, the chief claim for damages was based on the impaired physical condition of plaintiff due to the shoulder dislocation and its consequent harmful effect on his earning capacity; these, defendant then claimed, and now insists, could have been, and still can be, greatly relieved and reduced by plaintiff submitting to the usual surgical treatment appropriate to his condition, which he, thus far, has failed to follow in certain particulars, to be hereinafter mentioned.

On the first of the above-stated questions, it is sufficient to say that, as the case was presented at the trial under review, both defendant's negligence and plaintiff's contributory negligence involved issues for the jury.

As to the second question, the interrogatories ruled out on cross-examination, if objectionable at all, were such in form alone,—not in substance or on the score of irrelevancy; it is not to be anticipated that they will again be put in the same form, therefore it is unnecessary to consider them at this time further than to say that a trial judge should always be liberal in such matters, and the present rulings show an attitude rather to the contrary.

On the third question involved, first directing our attention to subdivision "(a)" thereof, the charge was as

follows: "You will consider and recompense him for any loss in wages up to the present time and any loss that he may experience in the future. Consider his expectancy of life, which doesn't control you but only guides you; ..... consider his age, his health, his habits, his sex, the condition of his health before the accident and the condition of his health at the present time." These instructions are both wrong in law and inadequate in substance. To begin with, this court has more than once said that, in cases like the one before us, the standard of compensation is not "loss of wages" which one injured "may experience in the future," but loss brought about by impairment of earning capacity; and these two, as pointed out in our cases (see Piper v. Adams Express Co., 270 Pa. 54, 61; Reitler v. Pa. R. R., 238 Pa. 1; McLane v. Pitts. Rys. Co., 230 Pa. 29, 37; Goodhart v. R. R. Co., 177 Pa. 1; McLaughlin v. City of Corry, 77 Pa. 109, 113), are essentially different things. In the second place, it was wrong to tell the jury, in the meager way the trial judge did it, that plaintiff's expectancy of life was not controlling on them. If the instruction as phrased in the charge was intended to convey the thought that the standard tables were not controlling, that would be correct (as we shall show at greater length in considering points "c" and "d"), but this is very different from saying that plaintiff's expectancy of life, after the jurors determined that question from a consideration of all the relevant evidence on the subject, was not to control them in estimating his future losses due to impaired earning power. These two mistakes present errors of law, and, in addition thereto, the part of the charge now under consideration contains a third fault, which, though perhaps not more than an inadequacy, should be noted. The trial judge entirely failed to instruct the jurors that it was their duty to determine, from the evidence, whether plaintiff's impairment of earning power would last until the end of his life expectancy, or, if not, how soon it would prob-

ably change for the better, and to adjust their award of damages on that score accordingly; it would have been error to refuse such instructions had they been requested, and to omit them, even when not requested, was at least an inadequacy in charge, which ought to be avoided on another trial. (We shall discuss the point in hand at greater length, later on, when dealing with the last question enumerated in the first paragraph of this opinion). While, since the Act of 1923, P. L. 439, 440, amending the Act of May 11, 1911, P. L. 279, a mere inadequacy of charge may be assigned as error under a general exception (Peterman v. Enggasser, 280 Pa. 528, 531),—which is all that appears on the present record, —it is still the rule that, ordinarily, we will not reverse on such assignments alone. The above-quoted instructions, however, are not only inadequate, but also, as we have indicated, they contain errors of law, and these latter faults cannot be overlooked or accounted harmless under the circumstances of this case.

As to subdivision "(b)" of the third question involved, this court, in Hockenberry v. Newcastle Elec. Co., 251 Pa. 394, 399, definitely said, "We have repeatedly held the failure......to instruct the jury......to find the present worth of future payments......, to be anticipated and capitalized in the verdict, even where no special requests for such instructions had been made, is reversible error," and this principle has been followed and approved in several subsequent cases[1]; though in other cases[2] judgments were affirmed where the award of the jury was so small that it was clear the absence of such instructions had done no harm. After deliberate

[1] Seeherman v. Wilkes-Barre Co., 255 Pa. 11, 16; Snyder v. Reading Co., 284 Pa. 59, 62, 63; Gerber v. Phila., 60 Pa. Superior Ct. 119, 127.

[2] Audino v. New Castle & Lowell Ry. Co., 83 Pa. Superior Ct. 257, 258, and Kerns v. Ripka, 85 Pa. Superior Ct. 97, following Burns v. Penna. R. R. Co., 239 Pa. 207, 209, and Fedorawicz v. Citizens Electric Illum. Co., 246 Pa. 141.

consideration of the whole matter, we have now reached the conclusion that, notwithstanding the rule heretofore laid down in the cases first referred to in this paragraph, a mere failure to charge on the subject of the obligation of the jury to reduce its award of future payments, anticipated in a verdict, to their present worth, is not always to be held reversible error, particularly in the absence of a request so to charge or of any effort to call the trial judge's attention to a lack of such instructions. On the contrary, there may be cases where, under such circumstances, the default would amount to no more than an inadequacy; therefore, we wish it understood that this particular omission will no longer be dogmatically classed by us as a reversible error. Whether the failure to charge on present worth was harmful error in the instant case, need not be decided, since, as already indicated, the judgment must be reversed with a venire facias de novo, on other grounds (see our discussion of subdivision "(a)," supra).

Before passing to a consideration of the next subdivision of question three, it may be well to state that, while the absence of instructions of the character now under discussion does not necessarily constitute reversible error, such instructions are always appropriate where future payments are to be anticipated in a verdict; trial courts must keep this fact in mind when dealing with that class of cases, for, should the exaggerated size of a particular award indicate the jury's failure to discount the value of future losses, the absence of all instructions on present worth might well lead to a reversal in cases where attention was called to the oversight at the trial or a new trial was refused despite an allegation of excessiveness in the verdict. Of course, where such instructions are given, they must be in proper form, and the jury's attention should be called to the fact that a man's earning power naturally decreases as his life approaches its end. This is particularly true of the manual laborer, but it also applies in

a less degree to the average brain worker. The point must be brought to the jury's attention so that, after the expectancy of life has been determined, proper allowances may be made for this natural decline, when computing losses brought about by the decrease of earning power attributable to the accident: see Reitler v. Pa. R. R., 238 Pa. 1, 7; Burns v. Pa. R. R., 219 Pa. 225, 227-8. Again, particular care must be exercised to bring home to the jury the essential idea that the value of a lump sum received to-day is much greater than the value of a number of smaller sums of equal total amount received over a long period of time; it ought also to be pointed out, so the jury will understand, that a sum sufficient to provide from interest alone the amount of the estimated annual decrease in earning power, would be grossly excessive, since the entire capital would remain unimpaired at the date of plaintiff's decease, whereas, of course, it is supposed to be absorbed by the annual payments: McLane v. The Pittsburgh Ry. Co., 230 Pa. 29, 37; Pauza v. Lehigh Valley Coal Co., 231 Pa. 577, 582; Reitler v. Pa. R. R. Co., 238 Pa. 1, 7, 8. Other points connected with the subject in hand will be touched on in the next paragraph.

We shall now consider subdivision "(c)" of the third question involved, which has to do with the admissibility in evidence of tables showing the present worth of a dollar payable at a fixed date in the future. First, it must be understood that direct application of annuity tables, —calculated, as they are, on the basis of a constant annual amount,—is never permissible in cases of the present type, because, if this course were pursued, the gradual decline in the average man's earning capacity toward the end of his days would make the result inaccurate in any given case. Present-value tables have been held admissible only to show the proportionate relation between payments which would ordinarily be made in the future and a lump sum to be awarded at once as compensation for their loss: Seeherman v. The Wilkes-Barre Co., 255 Pa.

11, 16, 17; Fletcher v. Wilmington Steamboat Co., 261 Pa. 1, 6; Faber v. Gimbel Bros., 264 Pa. 1, 4; Boggs v. Jewell Tea Co., 266 Pa. 428, 434. The purpose of admitting such tables has been to aid the jurors in making calculations they would otherwise have to figure out for themselves; but compensation for pecuniary loss is not to be arrived at by arithmetical processes alone, for it cannot be said that, the amount of the income being known, the loss is reduced to a mere matter of calculation,—the nature of the income previously enjoyed by the person involved and the probabilities of its continuance according to the particular circumstances on which it depends must be considered. In a case like the one at bar, plaintiff is not necessarily entitled to receive a perpetual annuity calculated on his loss of income from the date of the accident, for it is possible that, without regard to the effect of the accident in question, he might be disabled by illness, natural decline or other causes from continuing to earn the income he had before his injury. After taking into account the income itself, the circumstances under which it was earned by plaintiff, and all factors affecting the likelihood of its continuance, increase or diminution, as unaffected by the accident, the jurors are to say what, in their opinion, is fair compensation for the impairment of earning power, whether permanent or temporary, under which plaintiff suffers because of the accident; and, in order to work justice, the jury would have to understand that present-value tables could not be applied until the probable expectancy of the life in question had been decided and the amounts of future yearly losses determined. As pointed out earlier in this opinion, such losses are those due to diminution of earning power, and, as before indicated in the immediately preceding paragraph, usually a time arrives toward the end of the average man's life when his earning power becomes less and less; in other words, the sums or losses to be decided on and reduced to their present value are variable in that, after a certain time,

to be determined in every case by the jury, the annual earnings generally become smaller each year. To expect a jury to determine these dates and amounts and then to apply the tables and reach present values, is to expect the impossible,—as long experience has shown. The question is, What, in the light of this experience, should now be held as to the admissibility of such tables at a jury trial? Do they in fact aid the jury to make proper calculations, or does their presence almost inevitably tend to their misuse, or, in other words, to the direct application of them as though they were annuity tables? We are unanimously forced to the latter conclusion. This being so, we take advantage of the instant case,—where we have been materially aided by the researches and the arguments of able counsel, who considered all phases of the matter of proper evidence of future losses connected with impairment of earning power,—to say that, the present-worth tables should not be admitted at jury trials. They were not offered at the trial under review, and their absence did no harm.

What we have said in the immediately preceding paragraph, while at variance with some of our previous rulings, is not inconsistent with the doctrine of stare decisis, when properly understood, a tenet of which is, "When we leave the domain of substantive law and enter that of evidence and procedure,......changes may be made with greater.....freedom [and] courts usually are willing to relax judicially-established rules of evidence or procedure [when, after due trial, they are found] to be......harmful in operation": see article on Stare Decisis in Courts of Last Resort, 37 Harvard Law Rev. 409, 420. Where experience of long duration, and due judicial consideration, show a certain kind of evidence, though logically relevant, to be, in practical effect, harmful, it may be excluded. The reasons for this rule are well stated in Sutton v. Bell, 79 N. J. Law 507, 510, 77 Atl. 42, 43, thus: "The ground of such exclusion is, not that such evidential matter is lacking

in relevancy or devoid of probative force logically considered, but that, assuming it possessed of these qualities, [its] introduction......tends, in actual operation, to produce a confusion......in the mind of the jury ......in excess of, and, indeed, in the place of, the legitimate probative effect of such evidence; in fine, that the true issue before the jury is thereby obscured rather than illuminated. [Exclusion of such evidence] is not therefore a rule of relevance based upon considerations of logic, but a juridical rule based upon experience." Of course, such a rule must be sparingly applied, but it may be used in a proper case, and our experience shows it to be applicable to the kind of evidence we have been engaged in discussing under the subdivision in hand.

Subdivision "(d)" of the third question involved opens up a broad field for thought. The Carlisle tables and what are known as the American tables, the first based on the entire inhabitants of certain parishes in Carlisle, England (under living conditions different from those of the present, especially in our large cities), and the second made up from selected insured lives, were put in evidence by plaintiff. Both purport to show life expectancies at given ages; they were admitted without objection on the part of defendant, but the trial judge made no direct reference in his charge to either of them. When tables of this character are part of the evidence in a case, the court should carefully instruct concerning their use, and all the factors which tend to limit their application ought to be stressed. It is not enough for the trial judge to charge, as the judge in the present case evidently intended to do, that the tables are of some aid, but not conclusive, in determining the probable life of the plaintiff. "All the circumstances affecting the probable duration of plaintiff's life as disclosed by the evidence......should [be] called to the attention of the jury": Seifred v. Pa. R. R., 206 Pa. 399, 403; see also Kerrigan v. Pa. R. R., 194 Pa. 98, 105; Steinbrunner v. Pittsburgh, etc., Ry. Co., 146 Pa. 504, 515. The charge

must include a survey of such matters as sex, prior state of health, nature of daily employment and its perils, if any, manner of living, personal habits, indi· vidual characteristics and other facts concerning the injured party, which may affect the duration of his life: Pauza v. Lehigh Valley Coal Co., 231 Pa. 577, 579; Steinbrunner v. Pittsburgh, etc., Ry. Co., supra. For if all these variables are not called plainly and directly to the attention of the jurors, they are likely to be entirely overlooked and the tables accepted as a constant and exclusive guide; whereas they are far from occupying that evidential position. While mortality tables have been held admissible in nearly all, if not all, the states of the Union, this court, from the beginning, has expressed doubts as to the wisdom of using them at jury trials, and has constantly called attention to the practical abuses to which the employment of such evidence is susceptible.

So far as the competency of this character of evidence is concerned, as early as 1874 the New York Court of Appeals held that mortality tables were admissible, pointing out that they had been in use by the Supreme Court of New York, under a special rule of that tribunal, for many years, and that they had long been employed by the New York Court of Chancery and the Court of Equity in England, and adding that such a use "is too well known to require any citation of cases": Schell v. Plumb, 55 N. Y. 592, 599; see also Sauter v. N. Y. C. & H. R. R., 66 N. Y. 50, 54, and Hartley v. Eagle Ins. Co., 222 N. Y. 178, 118 N. E. 622. Similarly in other leading jurisdictions, standard life tables are held admissible: see Rooney v. N. Y., N. H. & H. Ry. Co., 173 Mass. 222, 226, 53 N. E. 435; Henderson v. Harness, 184 Ill. 520, 56 N. E. 786; Calvert v. Springfield E. L. & P. Co., 231 Ill. 290, 83 N. E. 184; V. & M. R. R. v. Putnam, 118 U. S. 545; Ritter v. Mutual Life Ins. Co., 169 U. S. 139, 152; see also, General Survey of Jurisdictions, in 19 R. C. L. 215.

In our own State, mortality tables were first admitted at the trial of a negligence case in 1891, Steinbrunner v. Pittsburgh Ry. Co., 146 Pa. 504, 514-517, though their admission as an aid in determining the value of a life estate was affirmed in Pittsburgh, etc., Ry. v. Bentley, 88 Pa. 178, 185, in 1878. Other cases on the general subject will be found in a note at the foot of this page.[3] The method of compilation of the Carlisle Tables and the reasons for their use are discussed by PAXSON, C. J., in the Steinbrunner Case (p. 517), where he said: "While we are unable to see how such evidence is to be excluded, I must be allowed to express the fear that it may prove a dangerous element in this class of cases, unless the attention of juries is pointedly called to the other questions which affect it." Subsequently, in Kerrigan v. P. R. R., 194 Pa. 98, 106, this court said: "Experience has demonstrated, however, that what was merely apprehended by PAXSON, C. J., has since been realized. Courts and juries as a rule give far more weight to this testimony than it is entitled to; they are apt to supply the place of proof of expectancy of the particular life by generalization from life tables. This is going further than was intended or than is warranted; therefore, a halt is called on the manifest tendency to give them undue weight." Subsequent cases, while admitting the general competency of life tables, adhere to the strict rules concerning their use, the main essentials of which we have hereinbefore summarized. Finally, in none of our decisions have we said that such tables are necessary to either plaintiff's or defendant's

[3] Shippen & Robbins's Appeal, 80 Pa. 391, 396; B. & O. Emp. Rel. Assn. v. Post, 122 Pa. 579, 600; McCue v. Knoxville Boro., 146 Pa. 580, 582, and cases there cited; Kraut v. Railway, 160 Pa. 327; Campbell v. City of York, 172 Pa. 205, 222; Goodhart v. Pa. R. R., 177 Pa. 1, 17; Benson v. Electric Ry. Co., 228 Pa. 290, 294; Amos v. Del. River Ferry Co., 228 Pa. 362, 369; Brenisholtz v. Pa. R. R., 229 Pa. 88, 93.

case; we have merely said that they are relevant proofs and admissible when offered.

We have now reached the conclusion that the admissibility of these tables is subject to two well-recognized principles: (1) Where there is already sufficient evidence before the jury from which, without the aid of the tables, it can properly decide the probable duration of the life in question, the trial judge may exercise his sound discretion, as in the case of any matter of cumulative evidence, and decline to admit the tables on the ground of lack of necessity. (2) Where under the facts of a particular case, the admission of the tables would tend to do more harm than good (if, for instance, the plaintiff did not enjoy normally good health before the accident,[4] or is following a particularly hazardous occupation, or there is no reasonable probability of the financially harmful effects of the injury lasting till the end of plaintiff's life), the trial judge, in the exercise of a sound discretion, may bar them, just as he may refuse any other evidence which will tend to confuse or mislead the jury.

The fourth point stated in the first paragraph of this opinion now requires consideration. Plaintiff's business pursuit was that of an adjuster for an employers' liability insurance company. The injury to his shoulder left his right arm in such bad condition that his hand "cramped" after he wrote "steadily for three or four minutes," and this made him give up his calling. Defendant produced expert medical testimony that "practically 100 per cent of dislocations have adhesions" which might cause the condition of which plaintiff complained, and that, when "passive-motion" treatment was not sufficient to overcome these adhesions, it was usual to break them forcibly, with the patient under an anæsthetic; that this treatment was resorted to in "practically every case," and, though causing the patient to suffer increased pain for a few weeks, it restored the

[4] Shippen & Robbins's Appeal, 80 Pa. 391, 396; Steinbrunner v. Pittsburgh, etc., Ry. Co., 146 Pa. 504, 515.

affected part to normal "in the majority of cases." This doctor testified that, in his professional opinion, plaintiff's case was the ordinary one of dislocation of the shoulder, and that, under the usual treatment, as described by him, "at least 70 per cent" of such cases recovered normal use of the affected member.

In Potts v. Guthrie, 282 Pa. 200, 203, we recently said: "An injured party should take reasonable steps to reduce the damages; if this may be done by a simple and safe surgical operation, a refusal to submit thereto should be considered by the jury in mitigation of damages......but that is not true where the suggested operation is serious and attended with grave danger." In Leitzell v. D., L. & W. R. R. Co., 232 Pa. 475, 477, where plaintiff's knee was injured, defendant presented the following point for charge: "If the jury believe that the condition of plaintiff can be relieved by a simple surgical operation, which an ordinarily prudent man would undergo, such facts must be taken into consideration as an element which would reduce the amount of damages to which the plaintiff would otherwise be entitled." The trial court affirmed this point, "provided the jury find that the proposed surgical operation is not a serious or dangerous one, and one that can be performed without any risk of failure or danger to the plaintiff." We held that "the point should have been affirmed without qualification," and said: "The plaintiff, of course, was entirely at liberty to refuse to submit to an operation, but if the effect of his refusal would be to retain permanently a condition which might be removed by a simple operation, which an ordinarily prudent man would, under the circumstances, undergo, that matter should certainly be taken into consideration by the jury in estimating the damages."

In the present case, the evidence as to proper and usual surgical treatment, mentioned above, must have been overlooked by the trial judge when charging the

jury, for no specific instructions were given on the point of plaintiff's legal obligation to reduce the damages attributable to the accident by undergoing further treatment. If the case is tried again, on evidence of like character, the law as announced in the authorities last above cited should be kept in mind and the jury instructed accordingly. An annotation of cases on this subject may be found in 11 A. L. R. 230.

Before concluding this opinion, it is but fair to say that, so far as the record shows, the trial judge was not specially requested to instruct on the point of plaintiff's obligation to reduce his damages, nor was the omission to do so called to the court's attention at the end of the charge; and also, in this connection, it may be noted that the opinion of the court below, entering judgment on the verdict, states, "counsel were asked at the conclusion of the charge if they had any further requests to make, [whereupon] counsel for defendant replied he desired nothing further." But the record as made up by the official stenographer and certified by the court below fails to show any such colloquy, and we must take the record as it stands; where the trial judge desires to amend the record following its certification, he should do so in a more formal way, after notice to counsel. This rule, however, has not affected the order we are about to enter.

For the reasons already stated in disposing of the third question involved, the fifth assignment of error, which complains of certain portions of the charge, is sustained, and the judgment is reversed with a venire facias de novo.