**Anthony T. MIHALIC, Jr. and Kenneth C. Grafton (Plaintiffs), Appellees,**

v.

**TEXACO, INCORPORATED, a Corporation, (Defendant and Third-Party Plaintiff), Appellant,**

v.

**Anthony T. MIHALIC, Jr. (Third-Party Defendant).**

**No. 16062.**

United States Court of Appeals Third Circuit.

Argued Dec. 5, 1966.

Decided May 12, 1967.

John David Rhodes, Pittsburgh, Pa., (Giles J. Gaca, Pringle, Bredin, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., on the brief), for appellant.

Leonard E. Price, Pittsburgh, Pa., (Price & Bercik, Pittsburgh, Pa., on the brief), for appellees (plaintiffs).

Donald E. Ziegler, Pittsburgh, Pa., for appellee (third party defendant).

Before STALEY, Chief Judge, and McLAUGHLIN and FORMAN, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

This is an automobile accident case with jurisdiction founded on diversity of citizenship and governed by the law of

Pennsylvania, where the accident occurred. A trial by jury in the United States District Court for the Western District of Pennsylvania resulted in judgments in favor of the plaintiffs, Anthony T. Mihalic, Jr. and Kenneth C. Grafton against defendant Texaco, Incorporated (hereinafter Texaco) and in favor of Mr. Mihalic as a third-party defendant against third-party plaintiff Texaco. This is an appeal from an order of the District Court denying Texaco's motions for judgment n. o. v. and new trial principally on grounds that the trial judge did not properly charge the jury on the negligence law of Pennsylvania.

At approximately 6:00 p. m. on January 9, 1964, James C. Hoffman began a work assignment for his employer, Texaco, which entailed the hauling of five loads of aviation gasoline from Coraopolis, Pennsylvania to the Greater Pittsburgh Airport. This required Mr. Hoffman to ascend a one-and-one-half mile upgrade on Route 51, which, in this section, has two lanes and wide berms on both sides of the road. Mr. Hoffman testified that it rained during the first four trips but that he experienced neither slipperiness on the roads nor difficulty in negotiating the hill nor with his equipment; he admitted, however, knowledge of a forecast of dropping temperature. When at 11:30 or 11:45 p. m. he began his fifth trip, the weather had become snowy and colder, but Mr. Hoffman noticed no snow on the road at the bottom of the hill, though upon climbing further he saw that snow lay upon the highway in increasing amounts. At first, the tractor-trailer, with a gross weight of about 58,000 pounds carried through the snow, but about half-way up the incline, he felt some slipperiness and began using his "sanders" which deposit sand in front of the drive wheels of the tractor on control from the cab, and proceeded up the hill for five to eight minutes until the supply of sand was exhausted.

On cross examination Mr. Hoffman testified that he was unable to pull off upon certain paved areas along the road because they were blocked with automobiles, and that he thought it unwise to pull onto the berm, since the recent rain had made the berm so soft that a truck diverting upon it would "just get stuck," "with maybe only two wheels off the road." Thus when his sand ran out, he turned on his warning flashers and put chains on the drive wheels, noticing at this time that the highway was extremely slippery. With the chains in place he drove slowly up the hill and upon entering a left-hand curve he felt, and then through his rear view mirror, he saw, his trailer sliding into the downhill lane. Once more he turned on his warning lights and in order to avoid a "jackknife" which in his opinion might have blocked both lanes, he "followed" the slide of the trailer and backed across the left lane of the highway to the other side. He stated that he was able to get the trailer off the road but that the front end of the tractor stuck out into the downhill lane. Mr. Hoffman testified that he was taking flares from a box on the side of the trailer when he saw the car carrying Messrs. Mihalic and Grafton coming toward him.

Plaintiffs Grafton and Mihalic left an establishment known as Tony's Restaurant located 1000 to 1500 feet uphill from the tractor-trailer sometime after midnight. They had been driving on Route 51 at about 11:30, but the driver of their car, Mr. Mihalic, testified that it was not snowy or icy at that time. When they left Tony's Restaurant, however, it was snowing heavily, and Mr. Mihalic noticed that the roads were slippery. While descending in second gear at fifteen to twenty miles per hour with visibility impaired by the snowfall, Mr. Mihalic rounded a curve to the right and, according to his testimony, saw the lights from the tractor in the left lane and then saw the trailer moving across the right or downhill lane. When he first saw the tractor's lights, he judged that he was about 120 feet away, but he did not see the trailer until he was 30 feet away. His passenger, Mr. Grafton testified that when he first saw the tractor-trailer fifty or sixty feet away, the headlights

were in the downhill lane and that he did not observe either part of the vehicle in motion. Mr. Mihalic did not remember putting on his brakes—though Mr. Grafton thought that he did—believed there was nothing he could do, and awaited the impact as his car slid into the tractor.

The appellant's first assignment of error is that the trial judge instructed the jury that a violation of Section 1004 of the Motor Vehicle Code of Pennsylvania,[1] requiring a vehicle to be driven on the right-hand side of the road, constitutes negligence *per se,* whereas the appellant contends that under Pennsylvania law such violation is merely *prima facie* evidence of negligence. The trial judge charged essentially as follows:

"So then, we have another provision of the code * * * that is that you shall drive your vehicle on the right-hand side of the highway, except in passing and overtaking.

"Any driver who fails to abide by the provisions of the code in the operation of his vehicle is guilty of negligence *per se.* * * * "

\* \* \* \* \* \*

"Now, there are a couple of other rules in connection with a case of this kind. One of them is that a vehicle, an automobile, on the wrong side of the road is *prima facie* evidence of a driver's negligence. That is, the mere presence over there of the vehicle at any time—that is, even if nobody saw it come over there, but it is there— that is *prima facie* evidence of negligence.

"Now, if you would deliberately drive it over there or put it over there, as Mr. Hoffman said he did, then, of course, he is guilty of negligence under the law. Because, he is on the wrong side of the road. But, again,

you see, unless it is the proximate cause of the accident and collision, it doesn't create liability."

Under Pennsylvania law, proof of a violation of Section 1004 is usually characterized as *prima facie* evidence of negligence.[2] We are less concerned, however, with the Latin terminology used in these jury instructions than with whether the process by which the jury was guided to its verdict corresponds with the process dictated by Pennsylvania law. Relevant cases indicate that proof of the basic fact of a violation of Section 1004 is "sufficient to carry the case to the jury," and will "justify a jury's finding the actor liable for the resultant injury." [3] This language alone does not support an instruction that proof of violation constitutes negligence as a matter of law, but in Matkevich v. Robertson,[4] the Pennsylvania Supreme Court indicated that such proof shifts a burden of justification to the defendant:

"[W]here, as here, the plaintiff is content to prove a collision as a result of the defendant's car being over on the wrong side of the road, the burden is on the defendant to offer exculpatory proof."

This shift of burden supports a charge that the *unexcused* violation of Section 1004 constitutes negligence under the law.[5]

Thus the real issue is whether Texaco presented evidence which would found a justifiable legal excuse, and if it did so, whether the trial judge's charge made that exculpatory theory available to the jury in its deliberation. Texaco urges the failure of the charge to do so as an independent ground of error.

Texaco's exculpatory theory was that the actions taken by its driver Mr. Hoffman, including his backing onto the left-hand side of the road, con-

---

1. 75 Pa.Stat.Ann. § 1004 (1960).

2. Nixon v. Chiarilli, 385 Pa. 218, 122 A.2d 710, (1956); Buchanan v. Belusko, 361 Pa. 465, 65 A.2d 386 (1949); Miles v. Myers, 353 Pa. 316, 45 A.2d 50 (1946).

3. Fisher v. Hill, 362 Pa. 286, 289, 66 A.2d 275, 277 (1949).

4. 403 Pa. 200, 203, 169 A.2d 91, 93 (1961).

5. See generally, 2 Harper & James, Torts, § 17.6 at 1007–1011 (1st ed. 1956).

stituted an exercise of prudent judgment in—and indeed were compelled by—a series of emergency circumstances not of his own making. This would be a valid excuse under Pennsylvania law [6] and there was evidence to support a charge on this point. Whether the exculpatory theory was properly made available to the jury in the charge is a more difficult question. In his main charge, the trial judge stated the emergency doctrine, but indicated some uncertainty as to whether it was applicable to Mr. Hoffman:

"\* \* \* if you are negligent, then the rule doesn't apply to you, you see.

"That is why I don't know if it applies to Mr. Hoffman. He is presumptively under the law guilty of negligence. He had more time, for instance, under the evidence, I think, to decide upon another course of action. So, I doubt that this applies to him. But, you know the rule now, and you may apply it to Mr. Mihalic and perhaps to Mr. Hoffman."

By conjoining instructions on the availability of the excuse with his own views of the evidence, without distinction, the judge may have led the jury to believe that Texaco could not take advantage of the theory even if prior due care in the circumstances were shown, rather than merely that in the judge's own view of the facts the theory was inappropriate. We believe, however, that this possible ambiguity was sufficiently dispelled, if the need were there, by the supplemental charge:

"Now, Mr. Rhodes argues, of course, that he was confronted with an emergency, that Mr. Hoffman was confronted with an emergency. And, he might have been when he started, and that might have been the reason he was over there, and maybe that excuses him, because his trailer started to float, or it started to weave back and forth behind him.

"The question, of course, is whether or not he might not have anticipated those things. And *you can consider what he did.* It may be in this case that you will find—now *I am stating my own view* \* \* \* that the driver has attempted to exculpate himself from the situation by his own testimony as to what occurred—and there is no question that it was a bad night —*but it is for you to consider the circumstances.*" (Emphasis supplied.)

Texaco argues that this presentation of the emergency doctrine erroneously led the jury to believe that the judge was not endorsing its legal availability, but merely referring to counsel's argument on that point. While such a conclusion in these particular circumstances is not implausible, we are unconvinced that prejudice has been shown with the clarity that warrants reversal.

Furthermore, it should be noted that in presenting the emergency doctrine to the jury, the judge did not charge that Texaco had the burden of proving this excuse, but merely allowed the jury to apply it as they saw fit. It therefore appears that Texaco shouldered less of a task under the charge of the trial judge than would be allowable under the quotation from Matkevich v. Robertson, *supra.*

Texaco also urges that the charge was fatally defective in imparting the content of the "assured clear distance" rule, codified as Section 1002 of the Pennsylvania Motor Vehicle Act,[7] providing that "no person shall drive any vehicle, upon a highway \* \* \* at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead." It is Texaco's view of the evidence that Mr. Mihalic was in violation of the statute in travelling so fast for conditions that even having seen the truck in his path, he was unable to stop, and was therefore

---

6. Chadwick v. Popadick, 399 Pa. 88, 159 A.2d 907 (1960); see Polonofsky v. Dobrosky, 313 Pa. 73, 169 A. 93 (1933), cited in Sowizral v. Hughes, 333 F.2d 829 (3 Cir. 1964).

7. 75 Pa.Stat.Ann. § 1002(a) (1960).

guilty of contributory negligence.[8] As error it alleges the failure of the charge to distinguish between the rule as applied to stationary and moving objects. Where an obstacle moves into the driver's path within a distance *short of* the assured clear distance, and he is unable to stop, the driver is, of course, beyond the scope of the prohibition.[9] The evidence whether the trailer was in motion was conflicting, while the charge was addressed only to the situation of a stationary object in the road. However, the failure to specifically charge on the circumstance of a moving obstacle was not prejudicial to Texaco since its effect would have been to offer Mr. Mihalic an additional avenue of avoiding Texaco's allegation of contributory negligence.

Finally, Texaco argues that the trial judge prejudicially charged the jury by commenting on the evidence in Messrs. Mihalic's and Grafton's favor. The judge was entitled to comment on the evidence, providing he made it clear that the ultimate assessment of the facts must be made by the jury and that his own views were not binding.[10] This he did adequately and we can discern no unfair partiality.

Accordingly the order of the United States District Court for the Western District of Pennsylvania of May 27, 1966 denying the motions of Texaco, Incorporated to set aside the verdicts in favor of Anthony T. Mihalic, Jr. and Kenneth C. Grafton and for judgment for Texaco, Incorporated notwithstanding the verdicts and for a new trial as well as denying the further motions of Texaco, Incorporated for judgment notwithstanding the verdict against it as a third-party plaintiff in favor of Anthony T. Mihalic, Jr. as third-party defendant, and for new trial in the third-party actions will be affirmed.

8. See Haines v. Dulaney, 424 Pa. 608, 227 A.2d 625 (1967); Parker v. Reading Co., 363 F.2d 608 (3 Cir. 1966).

9. *Compare* Fleischman v. City of Reading, 388 Pa. 183, 130 A.2d 429 (1957) *with*

Stark v. Fullerton Trucking Co., 318 Pa. 541, 179 A. 84 (1935).

10. See Sleek v. J. C. Penney Co., 324 F.2d 467, 478 (3 Cir. 1963).