Bonita M. TABOR, a minor, by Lewis H. Tabor and Betty W. Tabor, her parents and natural guardians, and Lewis H. Tabor and Betty W. Tabor, Individually and as husband and wife

v.

Richard F. MILLER

and

John R. Stearns, Defendants,

and

Herbert Boardman Lord, Jr., Defendant and Third-Party Plaintiff.

Civ. A. No. 33506.

United States District Court
E. D. Pennsylvania.

June 1, 1967.

**648**

Gordon W. Gerber, Philadelphia, Pa., Read Rocap, Jr., Media, Pa., of counsel, for plaintiff.

Detweiler, Sherr, Huhn & Hughes, Ronald H. Sherr, Philadelphia, Pa., for defendant Herbert Boardman Lord, Jr.

Murray C. Goldman, Philadelphia, Pa., for defendant John R. Stearns.

## OPINION

KRAFT, District Judge.

In this personal injury action the jury absolved two defendants, Richard F. Miller (Miller) and Herbert B. Lord, Jr. (Lord) and returned verdicts [1] in plaintiffs' favor only against the remaining defendant, John R. Stearns (Stearns), who has moved for a new trial.[2]

It is unnecessary to dwell, at length, upon the evidence concerning liability, in light of the nature of Stearns' attack on the verdict. Suffice it to say that the evidence amply supports the jury's determination of Stearns' liability. Briefly summarized, the wife-plaintiff was a passenger in her husband's car. This car, while stopped for a traffic signal, was struck in the rear by Miller's automobile, which, initially, had been struck in the rear by Stearns' vehicle. Thereafter, Lord's car struck Stearns' station wagon in the rear, but this collision followed and was unrelated to the Stearns-Miller-Tabor chain-collision. Stearns saw the Miller car stopped 200 feet ahead, but nonetheless, drove his car into the rear of Miller's car at a virtually unabated speed of 20 miles per hour.

In support of his post-trial motion Stearns asserts that:

I.—a continuance should have been granted because of Stearns' unavailability due to military service;

II.—the issue of life expectancy of the wife-plaintiff should not have been submitted to the jury;

III.—the trial judge erred in reading and affirming plaintiff's point for charge #6, which reads as follows:

"6. A tort-feasor is liable to the full extent of the damage inflicted even though that damage would not have been so great had there not been an already existing condition which was aggravated by the tort-feasor's misconduct. It is no defense to a tort-feasor that his victim was more susceptible to harm than he might reasonably have foreseen: Said another way, a tort-feasor must take his victim as he finds him: Sciandra v. Shovlin, 418 Pa. 378, 381 [211 A.2d 437] (1965)";

IV.—the jury was not charged with respect to a distinction between interested and disinterested witnesses;

V.—the verdict was excessive.

The threshold question, challenging the propriety of the denials of a continuance, requires some extended discussion. The collision occurred on June 9, 1961. Suit was instituted on May 22, 1963. A discovery deposition of defendant, Stearns, was taken September 10, 1963. The case appeared on the trial calendar for the fiscal year 1965–66, but was not reached. In the next year, on November 22, 1966, the case reached the head of the trial list, in the ready pool. All counsel were notified.

Stearns' attorney applied to Judge Body, then Calendar Judge, for a continuance on November 23, 1966. He denied the application, but, endeavoring to

---

1. Bonita Tabor $22,000; Lewis H. Tabor, her husband, $7,600; and Bonita M. Tabor, a minor, by her parents and natural guardians, $400.

2. The plaintiffs have filed a "contingent" motion for a new trial against Miller and Lord, in the event that Stearns prevails on his motion.

accommodate Captain Stearns, ordered the trial for Monday, January 9, 1967.

Counsel for Captain Stearns, on December 8, 1966, applied to Chief Judge Clary, then Calendar Judge, for a continuance. The record of this proceeding (Document 53) discloses that a letter from Captain Stearns to his attorney was read to the Calendar Judge. In that letter, Captain Stearns, a career officer in the United States Air Force, who has served for almost six years, represented that he was undergoing pilot training in Alabama, but would be in Philadelphia from December 23 to December 28, 1966. He also stated that, because of the shortage of pilots and the Viet Nam situation, his commanding officer thought it "highly desirable" that he complete his pilot training without interruption. In closing, Captain Stearns requested his attorney "Please let me know what provisions are made."

This letter and counsel's representations of his client's unavailability were all that were presented to the Chief Judge in support of the application. Chief Judge Clary refused a continuance and ordered that Captain Stearns' trial deposition be taken and the trial begun "on the 9th of January or such time thereafter as we are able to find a judge to assign it to."

The trial deposition of Captain Stearns was completed on December 27, 1966. The case was assigned for trial to a jury on January 12, 1967. Before the trial commenced, counsel for Captain Stearns again applied for a continuance, which the trial judge, cognizant of the earlier proceedings, denied.

Captain Stearns' counsel contends that the denials of continuance prejudiced his client in depriving him of the opportunity of having his credibility tested, *in person*, as did the remaining litigants. Militating against this factor is the fact that the suit was already more than 3½ years old and involved injuries, which had been suffered nearly 5 years before. Then, too, there was no persuasive showing of Captain Stearns'

actual unavailability either by his letter or his trial deposition. The rights and interests of the other litigants merited just consideration as well.

A fair reading of the letter and deposition, at most, warrant the conclusion that it would have been *inconvenient* for Captain Stearns to interrupt his pilot training to appear for trial. No request was made to the trial judge for any special consideration to Captain Stearns, such as, holding an evening or Saturday session, despite the short flight time between Alabama and Philadelphia. No affidavit was ever presented from the defendant's commanding officer or from the defendant, stating affirmatively that Captain Stearns could not be granted the requisite brief leave.

█ Under the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C. App. § 521, a motion for stay of court proceedings is addressed to the discretion of the Court. The pivotal question is whether "the ability of * * * the defendant to conduct his defense is not materially affected by reason of his military service." Boone v. Lightner, 319 U.S. 561, 63 S.Ct. 1223, 87 L.Ed. 1587 (1943)

"The Soldiers' and Sailors' Relief Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation. The discretion that is vested in trial courts to that end is not to be withheld on nice calculations as to whether prejudice may result from absence, or absence result from service. Absence when one's rights or liabilities are being adjudged is usually *prima facie* prejudicial. But in some few cases absence may be a policy, instead of the result of military service, and discretion is vested in the courts to see that the immunities of the Act are not put to such unworthy use. Boone v. Lightner, id., at p. 575, 63 S.Ct. at p. 1231 (emphasis in original)

One important, but hitherto unmentioned fact, is that both the letter and the deposition are silent on the question whether leave was, in fact, available to Captain Stearns, and if so, "Did he apply for a leave at all? The [letter] pretty clearly implied that he had not." Boone v. Lightner, id., at p. 572, 63 S. Ct., at p. 1230. The fact that Captain Stearns did return to Philadelphia to have his trial deposition taken in December indicates that the prospect of a brief leave to attend the trial was by no means impossible.

Although, ostensibly, the motions for continuance were made on behalf of Captain Stearns, we are fully aware that the real party in interest was Stearns' liability insurance carrier.[3] Recent decisions in this Circuit appear to indicate a trend by the Courts toward a liberalization of the rule which rigidly precludes the mention of insurance in personal injury actions. Kiernan v. VanSchaik, 347 F.2d 775 (3 Cir. 1965); Corbett v. Borandi, et al., 375 F.2d 265 (3 Cir. 1967); Slomberg v. Pennabaker, 42 F.R.D. 8, (M.D.Pa.1967) (discovery of insurance and policy limits allowed). In our view these motions for continuance presented a factual situation in which the existence of insurance was one of the circumstances to be considered in reaching a decision. The insurance carrier, through its investigators and retained counsel, had full control of the preparation of Captain Stearns' defense. Adequate reasonable notice of the impending trial was given to insurer and insured. Captain Stearns discovery and trial depositions had been taken.

The primary liability for any adverse judgment against Captain Stearns was the insurer's. While it is true that the plaintiffs' combined claims exceeded the policy limits, we think it noteworthy that, on October 31, 1966, according to the settlement memorandum of the pre-trial judge, the plaintiffs' counsel indicated willingness to accept, in settlement of all three actions, a sum which was well within the policy limits. However, insurer's counsel as attorney for the defendant, Stearns, rejected this proposal. During the trial the plaintiffs' counsel, in conference with the trial judge and other counsel, continued to express willingness to settle at the figure recommended by the pre-trial judge, but Stearns' counsel persisted in his rejection of the compromise.

> "It is common knowledge that a defendant in a negligence action, when he is insured has nothing to do with the case, except to come to court and testify as a witness. He does not choose the attorney who is to defend the action or have any say in the way in which the defense is to be conducted. He does no negotiating for a settlement, he does not have to go out and round up witnesses. All these things are done for him by the insurance adjuster. Insurance companies always carefully reduce their insured's version of the accident to writing as soon after the accident as possible. Once that is done, how then does his military service affect the insurance company's ability to defend the action? To say that the insured is the defendant, and the insurance company is not, is to ignore the facts of the case." Soldiers' and Sailors' Civil Relief Act, 47 Dick.L.R. 129, 135–136 (1943)

We are wholly unpersuaded that the conduct of this defendant's defense was materially affected by his absence. No use was made of his deposition by his own counsel; instead, it was offered only by the plaintiffs. Had Captain Stearns been present, his credibility could scarcely have been enhanced by trial testimony at variance with his earlier sworn trial deposition or his discovery deposition. It is more prob-

---

3. See Boone v. Lightner, id. at p. 569, 63 S.Ct. at p. 1229, wherein the Court stated: "Such a nominal defendant's absence in military service * * * might be urged by the insurance company, *the real defendant*, as ground for deferring the trial until after the war."

able that an unfavorable inference would have been drawn by the jury from any such inconsistent testimony.

■ Weighing all the relevant factors, including the fact that Captain Stearns was a career officer, whose further period of service in the military was clearly indeterminate, we conclude that the applications for continuance were properly denied.

■ The defendant next urges that the submission to the jury of the issue of Mrs. Tabor's life expectancy was erroneous. Specifically, the defendant argues that, because of her prior history of past illness, Mrs. Tabor had a very limited life expectancy, and that expert testimony was required to permit the jury to reach a reasonable conclusion upon her life expectancy. Expert medical opinion, while possibly helpful, was not required. The jury had sufficient evidence to enable it reasonably to decide the probable life expectancy of the plaintiff as it related to her claim for future pain and suffering.

Defendant has submitted no precedents to support his contention. He complains, moreover, that no life expectancy tables were in evidence to assist the jury in deciding this point.

■ Contrary to the defendant's assertion, more harm than good might have resulted from the submission of life tables to the jury under the facts of this case. Usually, a condition precedent to the use of such tables is that the plaintiff *enjoyed normally good health before the accident*. McCaffrey v. Schwartz, 285 Pa. 561, 563, 576, 132 A. 810 (1926). (emphasis supplied)

■ The defendant objects, too, to the allusion by plaintiffs' counsel to the Bible passage concerning a life expectancy of "three score and ten" in his closing speech to the jury.

"And as a postscript to the enumeration of disapprovals advanced by the defendant, it is urged that plaintiff's counsel abused the law because he 'offered the Bible to establish a

life table of "three score and ten years." ' The defendant has presented no precedent to bar quotations from the Bible in any phase of legitimate argumentation in court." Auerbach v. Phila. Transp. Co., 421 Pa. 594, 608, 221 A.2d 163 (1966).

We gave (pp. 464, 465, 466) adequate instructions to the jury respecting Mrs. Tabor's prior condition of health as it might affect her life expectancy and find this contention of defendant without merit.

We now turn our attention to the defendant's third ground—that the trial judge erred in affirming plaintiffs' point for charge no. 6 (see p. 2). The defendant urges that, since the plaintiff's claim was limited to her injuries resulting from the accident (cervical strain and tendonitis of the right shoulder), none of which existed before the accident, it was prejudicial error to charge in the language of plaintiffs' point no. 6. Defendant argues that the only existing "condition", which the jury could have considered to have been aggravated by the accident, was the plaintiff's emotional or mental illness for which no claim had been made by the plaintiff.

On this aspect we later charged in the language of Stearns' point no. 2:

"There has been no medical testimony that the accident caused or even aggravated an emotional illness in the plaintiff, Betty Tabor. Therefore, you may find the defendants responsible only for so much of her acute physical complaints as you determine were caused by the collision. The defendants can be held responsible only for so much of her complaints as are truly physical in nature, since there is no evidence that the defendants caused or aggravated a condition of mental illness."

■ Any prejudice, real or imagined, resulting from our affirmation of plaintiffs' sixth point was corrected by our later affirmation of defendant's second point. Rodriguez v. Brunswick Corporation, 364 F.2d 282, 286 (3 Cir.

1967); Mihalic, et al. v. Texaco, Inc., 377 F.2d 978 (3 Cir. 1967).

It is important to note, in this respect, that the *defendant* vigorously attempted to prove through his medical witnesses that Mrs. Tabor's pain was imagined and resulted from some undetermined functional or mental illness. Defendant elicited testimony that, in 1954, Mrs. Tabor suffered a "nervous breakdown" (n. t. 391). Stearns' counsel tried persistently to establish, through medical testimony, that Mrs. Tabor's pain was of a functional or non-organic nature. (n. t. 134, 369, 370, 380, 383, 384, 392, 393).

A substantial part of Mrs. Tabor's claim for damages was based upon her past, present and probable future pain and suffering. She has worn a cervical collar almost continuously since her injury, with little relief. She exhibited notable difficulty and marked discomfort in going to and from the witness stand.

■ Before this injury, Mrs. Tabor had had a long history of ill health including, *inter alia*, open heart surgery, gynecological problems, pneumonia and a nervous breakdown.[4] Thus, on June 9, 1961, the defendant, Stearns, injured a woman who had suffered a series of intermittent, grave illnesses. It is common knowledge that adjustment and sensitivity to pain vary with each individual. Some are so constituted as to be able to ignore or withstand severe pain; others are constituted less fortunately. The jury had ample opportunity, by observation of Mrs. Tabor on the witness stand and throughout the trial, to assess the nature and degree of Mrs. Tabor's suffering, discomfort and inconvenience.

■ Though plaintiffs' counsel did not claim mental illness or inject that issue into the case, the issue was raised and litigated by the defendant's forceful, unrelenting interrogation on this subject.[5] F.R.Civ.P. 15(b) provides that if issues are tried by the express or implied consent of the parties they shall be deemed to have been raised and the pleadings amended. Niedland v. United States, 338 F.2d 254, 259 (3 Cir. 1964). Having deliberately raised this issue in an effort to persuade the jury that Mrs. Tabor's claims of continued severe pain and suffering were only the imaginings of a disordered mind, defendant's counsel may not now fairly complain of the consequences of his own election to take the calculated risk, by now conjecturing about its possible effects upon the jury.

The defendant's fourth ground merits only brief discussion. We specifically instructed the jury (p. 444) to "consider the interest or lack of interest of the witness in the outcome of the trial"; and, (p. 445) to consider whether there was " * * * any bias, prejudice or feeling which might cause the testimony of that witness to be influenced or affected thereby."

■ The final ground, that the verdicts are excessive, is also without merit. The principal attack is made on the $22,000 award to Mrs. Tabor. Stearns places undue emphasis on the modest medical expenses ($355) incurred for treatment of Mrs. Tabor to support his argument, rejected by the jury, that Mrs. Tabor's pain was "abnormal and emotionally inspired." He stresses the facts that one of plaintiff's doctors had "recommended psychiatric care for her disorder", and that she did not undergo operative procedures to correct her condition. The jury would have been justified in finding that Mrs. Tabor was understandably fearful that, if she submitted to an operation, grave complications might result because of her heart condition; that she was reluctant to have the surgery performed because there was no reasonable assurance of a successful result by any physician who recommended the procedures.

---

4. Since this injury Mrs. Tabor has also experienced a kidney infection, pleurisy, renewed gynecological problems, and rib injuries from a fall in 1965.

5. No objection was interposed by the plaintiffs' counsel and the issue was further explored by him on cross-examination.

"An injured party should take reasonable steps to reduce the damages; if this may be done by a simple and safe surgical operation, a refusal to submit thereto should be considered by the jury in mitigation of damages * * * *but that is not true where the suggested operation is serious and attended by grave danger.*" Potts v. Guthrie, 282 Pa. 200, 203, 127 A. 605, 606 (1925) (emphasis ours); McCaffrey v. Schwartz, supra.

Evidence was presented to show that Mrs. Tabor has a 25% permanent limitation of motion in her neck; that she has not performed household tasks since her injury; that her husband was obliged to do all the shopping, cooking, cleaning and washing; that she has not participated in recreational activities, as she did before the accident; that sexual relations with her husband cause her pain and are avoided; that, since her injury, she has experienced almost constant, severe pain and discomfort—abated only by infrequent periods of relief; that she has been unable to lift her young grandchildren; that she must kneel to get in and out of bed; that a special headrest in the family car is necessary to lessen her discomfort.

As stated earlier, the evidence disclosed that Mrs. Tabor experienced a "nervous breakdown" in 1954. Dr. Vates and Dr. Blaker, in their testimony and reports, expressed their opinions that Mrs. Tabor's problems were probably "functional" and non-organic in nature (n. t. 392). Dr. Blaker, in his report, noted that there was a "major element of apprehension and anxiety here which is severe enough to completely color the entire picture." (n. t. p. 383). Dr. Resnick examined Mrs. Tabor in 1965, and found that "there were, as I believe, * * * physical *and emotional residuals*, that is there were effects still present in 1965 of the original injury of 1961; that these effects which were still present *were primarily organic*, that is they were physical, * * * there was structural injury to the neck, *but also with an abnormal emotional response to the injury.*" (p. 143) (emphasis ours)

Viewing the entire body of evidence, we think that the jury could reasonably have concluded that Mrs. Tabor's "abnormal emotional response" to her injury was directly attributable to the accident of 1961, and, so, was compensable. Alternatively, the jury might reasonably have concluded that a condition evidenced by the "nervous breakdown" of 1954, though dormant thereafter, was activated by the accident and injury of June 9, 1961. The outward manifestation of Mrs. Tabor's "abnormal emotional response" began soon after the accident, when she began continuously to wear the cervical collar, which defendant contends was neither necessary nor helpful. Several physicians testified that the wearing of the collar limited Mrs. Tabor's neck movement and contributed to its rigidity. These effects were all directly related to the injury and were part of the plaintiff's claim.

If any prejudice were to result from our charge, it harmed Mrs. Tabor, not Stearns, to instruct the jury peremptorily to exclude entirely all mental or emotional aspects of Mrs. Tabor's claim. Mihalic, et al. v. Texaco, Inc., 377 F.2d 978 (3 Cir. 1967).

The award to Mr. Tabor cannot be fairly regarded as excessive, in view of his loss of consortium, which was an almost total deprivation of his wife's past and future companionship and services.

Perceiving no merit in the reasons assigned in support of Stearns' motion, we enter the following

## ORDER

Now, this 1st day of June, 1967,

It is ordered that

(1) the motion of defendant, John R. Stearns, for a new trial be, and it is, denied;

(2) The conditional motion of the plaintiffs for a new trial be, and it is, denied.