Florence **GENERELLA**

v.

Caspar **WEINBERGER**, Secretary of Health, Education and Welfare.

Civ. A. No. 73-2731.

United States District Court,
E. D. Pennsylvania.
Dec. 30, 1974.

Joseph A. Zane, Schuylkill Haven, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

BECHTLE, District Judge.

Before us are cross-motions for summary judgment in an action seeking judicial review, pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), of the Secretary of the Department of Health, Education and Welfare's ("HEW") decision denying plaintiff's claim for disability benefits under the Act for the period April 8, 1970, to September 5, 1973.

After completing the ninth grade of schooling at age 16, plaintiff, who was born on December 11, 1933, went to work as a sewing machine operator in a shirt factory. This has been her sole place of employment for wages. She asserted she injured her lower back in an automobile accident on May 20, 1969. After a week's hospital stay, she returned to her job on October 15, 1969, and continued to work until April 8, 1970, when she claimed her back pain was unbearable. She again visited Dr. Robert M. Erdman, an orthopedic surgeon, who had treated her after the automobile accident. He diagnosed her case as lumbo-sacral instability and a possible herniated disc and recommended an exploratory operation of the lower back.[1] She was admitted to a hospital on April 15, 1970, where Dr. Erdman performed a laminectomy and a fusion operation of her spine from the level of the L–4 lumbar vertebra to the sacroiliac joints. The bone chips for the fusion were taken from her right ilium crest. She returned to her home after a 31-day stay at the hospital. In March of 1971, she gave birth to her fifth child. She filed a claim for disability benefits under the Act on August 26, 1971.

On February 23, 1972, the Division of Initial Claims of the Social Security Administration (after the Pennsylvania Bureau of Vocational Rehabilitation had denied her claim) determined that she was not entitled to disability insurance benefits because her condition was not disabling within the meaning of the Act on any date through December 31, 1971, the last day on which she met the earnings requirement of the Act. She filed a request for reconsideration on April 11, 1972. In a letter report dated June

---

1. X-rays showed a *spina bifida occulta* of the first sacral segment of the spine.

21, 1972, to the Pennsylvania Bureau of Vocational Rehabilitation, Dr. Erdman expressed his feeling that as of April, 1971, the plaintiff "had an excellent earning capacity and could engage in all work as a machine operator." On August 25, 1972, the Division of Reconsideration held the previous decision proper. She filed a request for a *de novo* hearing before an administrative law judge. Two months later, she received notice that the hearing would be held on January 12, 1973. The notice contained this remark: "A list of the pertinent evidence is being mailed to your attorney for his information." The list included the June 21, 1972, letter report of Dr. Erdman. Plaintiff's attorney did not request that any physician be subpoenaed to appear at the coming hearing. After that hearing, at which plaintiff and her husband were the only witnesses, the administrative law judge rendered his decision on August 8, 1973, holding that the plaintiff is not entitled to a period of disability or to disability insurance benefits within the meaning of § 223 of the Act. Approximately four weeks later, plaintiff returned to her former employment.

■ Regarding her motion for summary judgment, she points out that her behavior was not that of a malingerer for the record establishes that as soon as she was physically able she returned to work rather than await the outcome of this litigation. It is not our function in reviewing the disallowance of a disability claim under § 205(g) of the Act to determine the credibility of the witnesses before the administrative law judge or to weigh the evidence. Our role simply is to ascertain whether the Secretary's findings are supported by substantial evidence *and* to determine if his decision is in accordance with law and the pertinent regulations. Though

there is enough evidence in the record to support plaintiff's claim,[2] there is also sufficient evidence to support the findings of the Secretary. Accordingly, plaintiff's cross-motion will be denied.

■ Plaintiff claims also that the letter report (Exhibit 12) of Dr. Erdman should not have been admitted into evidence by the administrative law judge at the January 12, 1973, hearing. At that hearing, plaintiff's attorney objected to the admission of Exhibit 12 because assertedly he did not have the opportunity to cross-examine Dr. Erdman who was not present. Section 404.926 of the Secretary's regulations, 20 C.F.R. 404.926 (42 U.S.C., Regulations), permits a party to request the administrative law judge to issue a subpoena for the attendance of any witness at the hearing. The regulation also states, however, that such a request must be presented to the judge not less than five days prior to the hearing. The attorney does not complain that he did not know that the report would be offered in evidence at the hearing. The notice of the hearing contained a list of documents which would be considered by the judge. The Erdman report was included on the list. Under such circumstances, the report is admissible. Richardson v. Perales, 402 U.S. 389, 402, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Hill v. Richardson, 350 F. Supp. 137 (E.D.Mich., S.D.1972).

Lastly, plaintiff claims the administrative law judge erred in using certain medical texts to support his determination. At the hearing, the issue was whether plaintiff's assertion of pain from her back-related disability during the period April 8, 1970, to December 31, 1971, was of such a degree as to preclude her from engaging in substantial gainful activity within the meaning of the Act.[3] The administrative law judge

---

2. See, Sayers v. Gardner, 380 F.2d 940, 948–949 (6th Cir. 1967), in which the court rules that the hearing examiner "was guilty of reversible error in holding that pain, in itself, was not enough to constitute a disabling impairment, and that the pain . . .

must do more than hurt, and, in order to be considered disabling, must substantially aggravate the malady."

3. Section 223(d)(1) of the Social Security Act, 42 U.S.C. § 423(d)(1), for our pur-

summarized plaintiff's testimony about her pain as follows:

" . . . In addition to complaints of pain in the lower right back, radiating down to the toes, she complains of numbness on the right side affecting the hands. She also complains of numbness in the face and tongue. Her functions are restricted according to her testimony. She says if she walks the toes on the right side hurt. She is unable to stand or sit for any period of time because of pain. At hearing she sat forward on the edge of the chair throughout most of the hearing. In addition she complains of pain and tenderness at the right hip which was the donor site for the fusion. Presently she takes pain medication every four hours . . . Dr. Ko had prescribed Valium for her nerves. She states that she cannot sleep on a mattress and has to sleep on the floor. She is beset with insomnia because she awakens with pain and numbness. She finds that lying down in a supine position is her most comfortable position.

"At the present time she says that she does not drive a car and hasn't done so for the last two years because of sensation of no feeling in her legs. She is not able to do any needlework because of the numbness in the right hand and the tight feeling which she experiences . . . ."

The administrative law judge also summarized her testimony regarding restricted activities because of the physical impairment and pain.

He found that she did not exhibit any serious musculo-skeletal or neuro-muscular impairment or abnormalities. He noted that observable physical signs, such as loss of appetite, significant loss of weight,[4] nerve root compression, unnatural gait or limitation of motion, elevation of blood pressure, and deleterious effect upon the heart and kidneys compatible with the claimed intensity of her pain over a long period of time were not present. In concluding that plaintiff's functional capacities negate a finding of significant pain and discomfort, the administrative law judge cited and relied on four medical publications to bolster the reports of Drs. Erdman and Allen Kleiman, a surgical consultant to the Secretary of HEW. The latter's opinion, based on the medical record as of December 28, 1971, in the Secretary's files, was that plaintiff fell short of establishing the durational requirements of the Act for her impairment. The judge also quoted a passage taken from one of the medical texts, "The Nature of Pain," by Dr. James D. Hardy in the *Journal of Chronic Diseases* (July, 1956), p. 48, as follows:

" 'Pain of long duration is of necessity always one of low intensity, since the rate of tissue injury required to produce noxious stimulation intense enough to evoke a severe pain . . . will probably destroy the pain fibers and surrounding tissues so rapidly as to cause a reduction in pain . . . Thus, it is clear that high intensity pain must be of short duration, a matter of minutes at most, whereas pain of low intensity can be supported by the tissue for hours, or, with non-painful periods interspersed, indefinitely.' "

Statements from a learned medical publication, when independently used as evidence of the truth therein asserted, are inadmissible as violating the

---

poses defines "disability" as the "(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical . . . impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

Section 223(d)(3) further states: "For purposes of this subsection, a 'physical . . . impairment' is an impairment that results from anatomical, physiological . . . abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

4. Plaintiff had gained ten pounds between April 8, 1970, and January 12, 1973.

hearsay rule. Brown v. United States, 419 F.2d 337, 341 (8th Cir. 1970); Carter Products v. Federal Trade Commission, 201 F.2d 446, 449 (9th Cir. 1953), vacated on other grounds, 346 U.S. 327, 74 S.Ct. 2, 98 L.Ed. 4; United States v. One Device, etc., 160 F.2d 194, 198–199 (10th Cir. 1947); Anno., 65 A.L.R. 1102. There are exceptions to this rule. Such information is admissible where it is a matter of common knowledge and, therefore, judicially noticed or where the publication is concededly recognized as a standard authority by the medical profession. Tabor v. Miller, 269 F.Supp. 647, 652 (E.D.Pa.1967)—"adjustment and sensitivity to pain vary with each individual"—aff'd 389 F.2d 645 (3rd Cir. 1968), cert. denied, 391 U.S. 915, 88 S.Ct. 1810, 20 L.Ed.2d 654; Ber v. Celebrezze, 332 F.2d 293 (2nd Cir. 1964)—persons subject to same amount of arthritic changes will bear up differently because they possess relatively higher or lower thresholds of resistance to pain the debilitation generates; Franklin Life Ins. Co. v. William J. Champion and Co., 350 F.2d 115, 130–131, 26 A.L.R.3d 1034 (6th Cir. 1965)—cancer is an insidious malignancy; Ratliff v. Gardner, 279 F.Supp. 869, 872 (W.D.Va.1968)—"silicosis tends to worsen with time and to further incapacitate its victims." Plaintiff has not conceded that the cited publications are recognized as standard authority by the medical field, nor can it be said truthfully that the passages relied upon by the administrative law judge are common knowledge. In Nelms v. Gardner, 386 F.2d 971, 973 (6th Cir. 1967), the court ruled that one who suffers constant severe pain would suffer atrophy of the extremities, or would be afflicted by joint deformity or ankylosis is not a matter of common knowledge. "Administrative agents and agencies are not privileged to take judicial notice of evidentiary material which is not a matter of common knowledge." Cook v. Celebrezze, 217 F.Supp. 366, 368–369 (W.D. Mo., S.W.1963). Also see, Sparks v. Ribicoff, 197 F.Supp. 174 (W.D.Va.1961).

There is another exception: "The items are admissible only if relied upon by an expert witness during direct examination or called to his attention." McCormick, Evidence (2nd Ed. 1972) § 321. This exception is based on Rule 803(18) of the proposed Federal Rules of Evidence (1973).[5] Since no medical experts were called, it was error for the administrative law judge to have relied on the cited publications. Colwell v. Gardner, 386 F.2d 56, 71–72 (6th Cir. 1967); 6 Wigmore, Evidence (3rd Ed.) § 1694.

■ Neither the plaintiff nor her attorney were advised at any time before the administrative law judge handed down his decision on August 8, 1973, that the medical texts or portions thereof would be relied upon as authority for denying the claim. This omission, even if the texts were admissible in evidence, is an undue restriction on plaintiff's right of cross-examination. See, Reilly v. Pinkus, 338 U.S. 269, 275, 70 S.Ct. 110, 94 L.Ed. 63 (1949). Use of treatises without advance notice to the affected party has been held by this Court to be contrary to the Administrative Procedure Act, 80 Stat. 386, 5 U.S.C. § 556(d), regarding a party's right of cross-examination in an administrative hearing. Sosna v. Celebrezze, 234 F.Supp. 289, 290 (E.D.Pa.1964). Additionally, the reverse side of the notice of

5. Rule 803(18) of the Proposed Rules of Evidence (1973) provided:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \*

"(18) *Learned Treatises.* To the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice . . ."

Also see, Advisory Committee's Note Exception (18) to Rule 803 and pertinent cases cited therein.

hearing (Form HA–507.1A) under the heading "Conduct of Hearing," stated:

"You will have an opportunity to examine the documentary evidence on the day of the hearing. If you wish to examine it before the day of the hearing you may do so at the [Administrative Law Judge's] office."

Reliance on the medical texts under the circumstances by the administrative law judge was contrary to that notice.

The Secretary could argue that plaintiff was not prejudiced because the administrative law judge could have relied solely on the brief reports of Dr. Erdman and Dr. Kleiman in denying the claim. The short answer to that argument, had it been made, is that he did not. We can only speculate what weight he could have placed on those reports absent any reliance upon the medical publication cited.

The Secretary's motion for summary judgment will be denied for not being in conformity with law and the case will be remanded to the Secretary to permit further proceedings not inconsistent with this Memorandum Opinion.